IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Craig V. KITCHEN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Craig V. KITCHEN, Respondent.

Supreme Court

*No. 03–0432–D. Decided June 29, 2004.*

2004 WI 83

(Also reported in 682 N.W.2d 780.)

¶ 1. PER CURIAM. We have reviewed the findings of fact, conclusions of law, and recommendations of referee Gene B. Radcliffe for sanctions, pursuant to SCR 22.17(2).[1] Attorney Craig V. Kitchen was found to have engaged in unprofessional conduct in the course of his practice of law in violation of the rules of professional conduct. The referee recommended a 60–day suspension of Attorney Kitchen's license to practice law and payment of $8060.34 in costs. Neither side has appealed.

¶ 2. We approve the findings, conclusions, and recommendations, and determine that the seriousness of Attorney Kitchen's misconduct warrants the imposition of these sanctions.

¶ 3. Attorney Kitchen was licensed to practice law in Wisconsin in 1990. He has no prior disciplinary history.

¶ 4. The misconduct in this case results from Attorney Kitchen's representation of a married couple in a bankruptcy action that involved a claim of fraud. Attorney Kitchen obtained a $4250 retainer, from which he would draw at the rate of $175 per hour, and placed it in his trust account. Negotiations with the government resulted in a tentative settlement for $3000. Attorney Kitchen's clients gave him that amount

---

[1] SCR 22.17(2) provides:

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

which he also placed in his trust account. However, that settlement did not take place. The matter later settled for $10,700 which the clients paid directly.

¶ 5. As the action was being concluded, Attorney Kitchen's clients repeatedly tried to contact him over a period of one year or more, without success, to determine the status of the proceeding and to obtain an itemized bill for services rendered to date. It wasn't until they filed a grievance with the Office of Lawyer Regulation (OLR) that Attorney Kitchen provided a bill. The bill was in the amount of $8867.50 and included $175 for an hour of time to retrieve the file from storage and $1050 for six hours of time to prepare the bill itself.

¶ 6. The referee found that the five violations alleged in the OLR's complaint against Attorney Kitchen had indeed occurred.

¶ 7. The OLR had alleged that Attorney Kitchen violated SCR 20:1.4(a)[2] which requires that a lawyer keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. The referee found that Attorney Kitchen failed to timely respond to his clients' request for information concerning the status of the bankruptcy and for a bill.

¶ 8. The OLR further alleged that Attorney Kitchen violated SCR 20:1.5(a)[3] requiring that a

---

[2] SCR 20:1.4(a) provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCR 20:1.5(a) provides:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

lawyer's fees shall be reasonable. The referee found that charging the clients $175 to retrieve their file in order to answer their inquiries was unreasonable. The referee also stated that billing the clients for six hours of time in preparing the bill might also have been unreasonable, but did not specifically so find.

¶ 9. The OLR further alleged that Attorney Kitchen violated SCR 20:1.15(e)[4] requiring a lawyer to

---

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[4] SCR 20:1.15(e) provides:

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any

maintain complete records of trust account funds. The referee found that he failed to maintain the requisite degree of documentation to permit identification of trust account transactions and the periodic balances on hand for each client.

¶ 10. The OLR also alleged a violation of SCR 20:1.15(f)[5] requiring a lawyer to submit trust account records to the OLR. The referee found that Attorney Kitchen had failed to maintain proper trust account records, specifically the cash receipts journal, disbursements journal, subsidiary ledgers, monthly schedule, monthly balance, and monthly statements, all as required by SCR 20:1.15(e). Having failed to keep these records, the referee found that there was a commensurate failure by Attorney Kitchen to submit the requisite records to the OLR to assist it in its investigation. The

unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

[5] SCR 20:1.15(f) provides:

(f) Upon request of the office of lawyer regulation, or upon direction of the Supreme Court, the records shall be submitted to the office for its inspection, audit, use, and evidence under such conditions to protect the privilege of clients as the court may provide. The records, or an audit thereof, shall be produced at any disciplinary proceeding involving the attorney wherever material. Failure to produce the records shall constitute unprofessional conduct and grounds for disciplinary action.

referee expressed a belief that Attorney Kitchen probably never kept any records and was unable to recreate what had occurred because he had also lost the basic bank records, including deposit slips, underlying the trust account transactions.

¶ 11. Finally, the OLR alleged a violation of SCR 22.03(6)[6] which states that it is misconduct for a lawyer in the course of a disciplinary investigation to fail to provide information as requested. The referee found that, in addition to not having the proper trust account records and being unable to submit them to the OLR, Attorney Kitchen misled the OLR by suggesting on several occasions that he was sending the necessary documentation but later conceding that he did not have it.

¶ 12. The referee adopted the OLR's request to recommend a 60–day sanction, citing several similar cases in which a suspension of this length was imposed. *See e.g. In re Disciplinary Proceedings Against Schmitz*, 193 Wis. 2d 279, 532 N.W.2d 716 (1995) (60–day suspension imposed for failure to maintain proper trust account records and failure to provide competent representation). As a mitigating factor, the referee noted there was no monetary loss here, although he did acknowledge there was an "implication" of commingling of funds. The referee further noted that Attorney Kitchen is trying to improve his office procedures to better communicate with clients and avoid trust account problems. On the other hand, the referee noted

---

[6] SCR 22.03(6) provides: "(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

that Attorney Kitchen expressed little remorse for his actions and tried to minimize his misconduct by claiming that no one other than these clients had ever complained or been harmed. In conclusion, the referee submits that a reprimand is inappropriate and the suspension with costs is warranted.

¶ 13. The referee also recommends, in accordance with the OLR's request, that as a condition of reinstatement Attorney Kitchen be required to produce various trust account records from the period involved in this case or at least a sworn statement as to what happened if actual records cannot be produced.

¶ 14. We adopt the findings of fact and conclusions of law of the referee. Attorney Kitchen's misconduct represents a serious failure to comply with the rules of professional conduct. Furthermore, the referee's recommendation of a sanction is appropriate discipline for this misconduct.

¶ 15. IT IS ORDERED that the license of Attorney Craig V. Kitchen to practice law in Wisconsin is suspended for a period of 60 days, and until reinstated by this court, effective August 3, 2004.

¶ 16. IT IS FURTHER ORDERED that Attorney Kitchen comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶ 17. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Kitchen shall pay $8060.34 to the Office of Lawyer Regulation representing the costs of this proceeding. If these costs are not paid within the time specified, and absent a showing to this court of an inability to pay the costs within that time, the license of Attorney Kitchen to practice law shall remain suspended indefinitely until further order of the court.

¶ 18. IT IS FURTHER ORDERED that as a condition of reinstatement Attorney Kitchen shall furnish to the OLR: (1) trust account records including monthly bank statements for December 1998 and May 2001; cancelled checks for June 1999, January 2000, February 2001, and May 2001; all deposit slips from April 1998 to the present; and in every case where the deposit slip fails to identify all deposits by client name, copies of all checks or items deposited to the account; and (2) any journals or ledgers, including individual client ledgers, that he has used from April 1998 to the present to record transactions in his client trust account, to further include any check stubs and registers relating thereto. In the absence of any of these records, he must furnish the OLR with a sworn statement, or sworn testimony, detailing what records were maintained, what efforts were taken to locate them, and why he cannot produce them.